# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| RICHARD ANDRE, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SMILEDIRECTCLUB, INC., DAVID KATZMAN, KYLE WAILES, STEVEN KATZMAN, JORDAN KATZMAN, ALEXANDER FENKELL, RICHARD SCHNALL, SUSAN GREENSPON RAMMELT, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., BOFA SECURITIES, INC., JEFFERIES LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GUGGENHEIM SECURITIES, LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., and LOOP CAPITAL MARKETS LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Richard Andre ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SmileDirectClub, Inc. ("SmileDirectClub" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by SmileDirectClub; and (c) review of other publicly available information concerning SmileDirectClub.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired SmileDirectClub Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2019 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. SmileDirectClub purports to be the "first direct-to-consumer medtech platform for transforming smiles" that manufactures, markets, and sells clear aligner treatments.

3. On September 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 58.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $1.27 billion from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for employee incentive bonuses, certain equity arrangements, and general corporate purposes.

4. On September 24, 2019, a class action complaint was filed by dentists, orthodontists, and consumers against SmileDirectClub, alleging false advertising, fraud, negligence, and unfair and deceptive trade practices. The complaint disputed the accuracy of

several statements in the Registration Statement and highlighted that the Company is subject to litigation for operating as a dentist without proper licensing in several states, as well as other litigation.

5. On this news, the Company's share price fell $1.47, or nearly 9%, to close at $15.68 per share on September 24, 2019, on unusually heavy trading volume. The price stock continued to decline over the next two trading sessions by $2.74, or over 17%, to close at $12.94 per share on September 26, 2019, on unusually heavy trading volume.

6. By the commencement of this action, the Company's stock was trading as low as $12.94 per share, a nearly 44% decline from the $23 per share IPO price.

7. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that administrative personnel, rather than licensed doctors, provided treatment to the Company's customers and monitored their progress; (2) that, as a result, the Company's practices did not qualify as teledentistry under applicable standards; (3) that, as a result, the Company was subject to regulatory scrutiny for the unlicensed practice of dentistry; (4) that the efficacy of the Company's treatment was overstated; (5) that the Company had concealed these deceptive marketing practices prior to the IPO; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange

## PARTIES

13. Plaintiff Richard Andre, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired SmileDirectClub securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant SmileDirectClub is incorporated under the laws of Delaware with its principal executive offices located in Nashville, Tennessee. SmileDirectClub's Class A common stock trades on the NASDAQ exchange under the symbol "SDC."

15. Defendant David Katzman was, at all relevant times, the Chief Executive Officer and Chairman of the Board of Directors of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Kyle Wailes ("Wailes") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Steven Katzman was, at all relevant times, the Chief Operating Officer and a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Jordan Katzman was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Alexander Fenkell ("Fenkell") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Richard Schnall ("Schnall") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant Susan Greenspon Rammelt ("Rammelt") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendants David Katzman, Wailes, Steven Katzman, Jordan Katzman, Fenkell, Schnall, and Rammelt are collectively referred to hereinafter as the "Individual Defendants."

23. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

24. Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO.

25. Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO.

26. Defendant Jefferies LLC ("Jefferies") served as an underwriter for the Company's IPO.

27. Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO.

28. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

29. Defendant Guggenheim Securities, LLC ("Guggenheim") served as an underwriter for the Company's IPO.

30. Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's IPO.

31. Defendant William Blair & Company, L.L.C. ("William Blair") served as an underwriter for the Company's IPO.

32. Defendant Loop Capital Markets LLC ("Loop Capital") served as an underwriter for the Company's IPO.

33. Defendants J.P. Morgan, Citigroup, BofA, Jefferies, UBS, Credit Suisse, Guggenheim, Stifel, William Blair, and Loop Capital are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired SmileDirectClub Class A common stock issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SmileDirectClub's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of SmileDirectClub shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by SmileDirectClub or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of SmileDirectClub; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

40. SmileDirectClub purports to be the "first direct-to-consumer medtech platform for transforming smiles" that manufactures, markets, and sells clear aligner treatments.

### The Company's False and/or Misleading Registration Statement and Prospectus

41. On September 9, 2019, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 11, 2019.

42. On September 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 58.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $1.27 billion from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for employee incentive bonuses, certain equity arrangements, and general corporate purposes.

43. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

44. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

45. The Registration Statement touted the Company's market opportunity, stating that that "[a]pproximately 85% of people worldwide have malocclusion, with less than one percent treated annually" and that SmileDirectClub's "aligner treatment can help over 90% of people with malocclusion."

46. Moreover, the Company claimed that a "treating doctor" assesses and monitors customers' progress and that the "teledentistry platform" allows doctors to interact with patients without in-person visits. The Registration Statement further stated, in relevant part:

> Our member journey starts with two convenient options: a member books an appointment to take a free, in-person 3D oral image at any of our over 300 retail stores ("SmileShops") across the U.S., Puerto Rico, Canada, Australia, and the U.K., or orders an easy-to-use doctor prescribed impression kit online, which we mail directly to their door. Using the image or impression, we create a draft custom treatment plan that demonstrates how the member's teeth will move during treatment. Next, via SmileCheck, a state licensed doctor within our network reviews and approves the member's clinical information and treatment plan. If the member is a good candidate for clear aligners and decides to purchase, ***the treating doctor prescribes custom-made clear aligners, which we then***

*manufacture and ship directly to the member.* In addition, the member has the opportunity to review a 3D rendering of how their teeth will move during treatment as part of their purchase decision. *SmileCheck is also used by the treating doctor to monitor the member's progress and enables seamless communication with the member over the course of treatment.* Upon completion of treatment, a majority of our members purchase retainers every six months to prevent their teeth from relapsing to their original position.

(Emphases added.)

47. Regarding advertising, the Company stated in the Registration Statement:

*We are subject to consumer protection laws that regulate our marketing practices and prohibit unfair or deceptive acts or practices. Our actual or perceived failure to comply with such obligations could harm our business, and changes in such regulations or laws could require us to modify our products or marketing or advertising efforts.*

In connection with the marketing or advertisement of our products and services, we could be the target of claims relating to false, misleading, deceptive, or otherwise noncompliant advertising or marketing practices, including under the auspices of the FTC and state consumer protection statutes. If we rely on third parties to provide any marketing and advertising of our products and services, we could be liable for, or face reputational harm as a result of, their marketing practices if, for example, they fail to comply with applicable statutory and regulatory requirements.

If we are found to have breached any consumer protection, advertising, unfair competition, or other laws or regulations, we may be subject to enforcement actions that require us to change our marketing and business practices in a manner which may negatively impact us. This could also result in litigation, fines, penalties, and adverse publicity that could cause reputational harm and loss of member trust, which could have an adverse effect on our business.

48. Regarding pending litigation, the Company stated in the Registration Statement:

The Company "periodically receive[s] communications from state and federal regulatory and similar agencies inquiring about the nature of [its] business activities, licensing of professionals providing services, and similar matters. Such matters are routinely concluded with no financial or operational impact on [SmileDirectClub]. Currently there are no actions with any agency that are expected to have a material adverse effect on [the Company's] business, results of operations, and financial condition."

49. The Registration Statement was materially false and misleading and omitted to state: (1) that administrative personnel, rather than licensed doctors, provided treatment to the

CLASS ACTION COMPLAINT
8

Company's customers and monitored their progress; (2) that, as a result, the Company's practices did not qualify as teledentistry under applicable standards; (3) that, as a result, the Company was subject to regulatory scrutiny for the unlicensed practice of dentistry; (4) that the efficacy of the Company's treatment was overstated; (5) that the Company had concealed these deceptive marketing practices prior to the IPO; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

50.     On September 24, 2019, a class action complaint was filed by dentists, orthodontists, and consumers against SmileDirectClub, alleging false advertising, fraud, negligence, and unfair and deceptive trade practices (the "Complaint"). The Complaint disputed the accuracy of several statements in the Registration Statement and highlighted that the Company is subject to litigation for operating as a dentist without proper licensing in several states, as well as other litigation.

51.     The Complaint disputed that "a treating doctor monitors a member's progress," stating that "SmileDirect members do not even know the identity of the dentists who are involved in their case (to the extent that they are involved)" and that "no patient-doctor relationship is ever actually established." Additionally, the Complaint alleged that communications between the Company and customers are handled by unlicensed administrative personnel, rather than a "treating doctor" as the Company claims.

52.     Moreover, the Company claims that its customers are served by "teledentistry," but the Complaint alleges that that SmileDirectClub's practices do not meet the American Dental Association's standard for "teledentistry" because its "'affiliated dentists' do not interact directly or even indirectly with customers." Furthermore, the Company claims its products can address "bite issues" but, according to the Complaint, SmileDirectClub's aligners "will only address alignment and will not correct any existing bite issue."

53.     As a result of these and other marketing practices, the Company was subject to

various lawsuits, as identified in the Complaint:

a. At least 40 state claims filed by the relevant state affiliate of the American Association of Orthodontists alleging, in a substantiated fashion, that SmileDirect is illegally operating as a dentist without proper licensing in the subject state. Indeed, a Federal District Court in Georgia recently found that SmileDirect was in fact illegally operating as a dentist in connection with its ordinary course practices. See Exhibit A, attached hereto.

b. A lengthy, detailed and substantiated Citizen Petition filed by the American Dental Association with the federal Food and Drug Administration alleging in a detailed and substantiated fashion that SmileDirect is in continuing violation of the FD&C Act because it is selling plastic aligners that it manufactures in Tennessee (a) without a valid prescription and (b) without having had such aligners approved pursuant to a 510(k) clearance procedure. See Exhibit B, attached hereto.

c. A complaint filed by the American Dental Association with the Federal Trade Commission ("FTC") requesting that the FTC investigate numerous false and misleading claims made by SmileDirect to fraudulently entice customers to purchase its products and services. The ADA's detailed lengthy complaint alleges that SmileDirect has made false and misleading claims and engages in unfair and deceptive practices within the meaning of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. See Exhibit C, attached hereto.

d. Thousands of substantiated, serious customer complaints with respect to the efficacy of the SmileDirect aligner treatment and injuries suffered with respect thereto. Among these thousands of complaints are complaints that the product did not work, that the product came in a broken fashion, and that the product made consumers' teeth "worse" and, in certain instances, substantially worse:

- "Product made my teeth worse with spacing and gaps. Did not work as described and was led to believe it would get fixed ... After five months and four aligners and a cracked tooth and numerous attempts to talk to customers service to fix my issues all of which led nowhere."

- "Please don't do this to yourself - especially if you're just trying to save money ... A few months closer to the seventh month, my crown and implant - which was super expensive to get done - came off together. When I called them about this, they kept making me email people ... I am here months later with about the same smile as before, $1700 down the drain, and my crown and implant not intact."

54. Moreover, the Complaint alleges that the Company and its officers engaged in efforts to cover up such criticism prior to the IPO. According to the Complaint, "dentists,

CLASS ACTION COMPLAINT
10

orthodontists, and other parties have received a barrage of 'cease and desist' letters from SmileDirect's counsel threatening lawsuits and threatening the filing of ethical complaints with regulators against such professionals who have merely voiced legitimate, substantiated opinions regarding the clear inadequacy of the SmileDirect Program."

55. On this news, the Company's share price fell $1.47, or nearly 9%, to close at $15.68 per share on September 24, 2019, on unusually heavy trading volume. The price stock continued to decline over the next two trading sessions by $2.74, or over 17%, to close at $12.94 per share on September 26, 2019, on unusually heavy trading volume.

56. By the commencement of this action, the Company's stock was trading as low as $13.88 per share, a nearly 40% decline from the $23 per share IPO price.

## FIRST CLAIM
### Violation of Section 11 of the Securities Act
### (Against All Defendants)

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

58. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

59. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

60. SmileDirectClub is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

61. As issuer of the shares, SmileDirectClub is strictly liable to Plaintiff and the Class for the misstatements and omissions.

62. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

63. By reasons of the conduct herein alleged, each Defendant violated, and/or

controlled a person who violated Section 11 of the Securities Act.

64. Plaintiff acquired SmileDirectClub shares pursuant and/or traceable to the Registration Statement for the IPO.

65. Plaintiff and the Class have sustained damages. The value of SmileDirectClub Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

66. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

67. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

68. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of SmileDirectClub within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause SmileDirectClub to engage in the acts described herein.

69. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

70. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

 (c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

 (d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 2, 2019  By: _/s/ E. Powell Miller_
**THE MILLER LAW FIRM**
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Sharon S. Almonrode (P33938)
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Richard Andre*